CYNTHIA H. GILROY, APPELLANT, V. DANIEL W. RYBERG,
SUCCESSOR TRUSTEE, ET AL., APPELLEES.
667 N.W.2d 544
Filed August 15, 2003. No. S-02-487.

John A. Sellers for appellant.

Duane M. Katz for appellees Robert L. Cummins and Frank L. Huber.

Daniel W. Ryberg, pro se.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

This case presents us with our first opportunity to examine when a trial court should invoke equity to set aside a foreclosure sale conducted under a power of sale in a trust deed.

After Cynthia H. Gilroy and John M. Gilroy failed to make payments on a note secured by a trust deed, Daniel W. Ryberg, the successor trustee, conducted a sale.

Cynthia appeals from the district court's decision refusing to set aside the sale. She argues that the notice of default did not comply with the Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 1996 & Cum. Supp. 2000) (the Act). She also claims that Ryberg failed to comply with the Act and terms of the trust deed in conducting the trustee's sale.

We determine that the notice of default met the requirements of the Act. Although we agree that Ryberg did not conduct the sale in compliance with the terms of the trust deed, we affirm the district court's decision because Cynthia failed to show that she was prejudiced by Ryberg's errors.

## I. FACTUAL BACKGROUND

On July 11, 2000, John and Cynthia executed and delivered to Robert L. Cummins a promissory note for $80,000. At the time, Cynthia owned improved property, described as "Lot 139, Riverside Lakes, a Subdivision, as surveyed, platted and recorded, in Douglas County, Nebraska, commonly known as 440 Shorewood Lane, Waterloo, Nebraska 68069" (the property). To secure the note, John and Cynthia executed and delivered to Cummins a trust deed. The trust deed conferred a power of sale upon the trustee.

Cummins executed a substitution of trustee that named Ryberg as the successor trustee. On June 27, 2001, Cummins instructed Ryberg to foreclose by using the power of sale in the trust deed. Ryberg then prepared a notice of default and filed it with the register of deeds. The notice of default stated that "a

breach of the obligation of the Trustor for which such Deed of Trust was made has occurred, to wit: non-payment."

Afterward, Ryberg prepared and filed a notice of trustee's sale with the register of deeds. The notice of trustee's sale stated that the property would "be sold at public auction to the highest bidder for cash on the first floor, Jury Assembly Room, Hall of Justice, 17th & Farnam, Omaha, Nebraska on the 8th day of November, 2001, at 1:30 P.M."

On November 8, 2001, Ryberg conducted the trustee's sale. Frank L. Huber and a junior lienholder submitted bids, but Huber submitted the highest bid at $128,500. Later that day, Huber gave Ryberg a cashier's check for 10 percent of the winning bid. Nine days after the sale, Huber paid the balance by personal check. After receiving payment, Ryberg executed and delivered a trustee's deed to Huber and Huber's wife, and on November 19, Ryberg filed the trustee's deed with the register of deeds.

## II. PROCEDURAL BACKGROUND

Cynthia filed a declaratory judgment action naming Ryberg, Cummins, and Huber as defendants. John was neither named as a plaintiff, nor has he been made a party to the action. In her petition, Cynthia sought an order (1) setting aside the sale because it did not comply with either the Act or the terms of the trust deed and (2) quieting title to the property in her.

The court set March 7, 2002, as the date for trial, but before trial, Cynthia moved for a continuance. She complained that she had planned to take Huber's deposition on March 4, but that she could not because Huber was hospitalized. The judge did not expressly overrule the motion; instead, he told Cynthia to let him know if she had been able to secure Huber's deposition and that then he would rule on the motion. Apparently, Cynthia was able to take Huber's deposition, and the court overruled the motion for a continuance.

After a trial on March 7, 2002, the court denied Cynthia relief.

## III. ASSIGNMENTS OF ERROR

Cynthia's brief contains eleven assignments of error. Assignments of error Nos. 2, 3, and 4 address the court's decision denying her motion for partial summary judgment. We will not

consider these three assignments of error because the question whether summary judgment should have been granted generally becomes moot after a full trial on the merits. See *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000).

Assignments of error No. 5 (which refers to the notice of default) and No. 8 (which refers to the Uniform Commercial Code's duty of good faith and fair dealing) are so confusing that we will not consider them. See *McLain*, 259 Neb. at 758-59, 612 N.W.2d at 224 (holding that "a generalized and vague assignment of error does not advise the appellate court of the issue submitted for decision and will not be considered").

In assignment of error No. 10, Cynthia complains that the court erred in failing to quiet title in her because Ryberg refused payment in full, which was tendered before commencement of the sale. No such argument, however, is made in her brief, and we will not consider this assignment of error. See *In re Application of Lincoln Electric System*, 265 Neb. 70, 655 N.W.2d 363 (2003).

Also, Cynthia argues that the trust deed required that she be notified by certified mail of the appointment of Ryberg as the successor trustee. She argues that the sale should be set aside because she was sent notice of Ryberg's appointment by first class mail instead of certified mail. Cynthia does not, however, assign as error the court's rejection of this argument. Errors argued but not assigned will not be considered on appeal. *Forgét v. State*, 265 Neb. 488, 658 N.W.2d 271 (2003). Accordingly, we will not consider this argument.

We will consider the remainder of Cynthia's assignments of error, which, restated and consolidated, contend that the court erred in (1) failing to set aside the sale and to order title quieted in her because the notice of default failed to set forth the nature of the breach, (2) failing to set aside the sale and to order title quieted in her because Ryberg allowed Huber to pay the balance of his bid 9 days after the sale, (3) failing to set aside the sale and to order title quieted in her because Ryberg allowed Huber to pay the balance of his bid by personal check, and (4) overruling her motion for a continuance.

## IV. STANDARD OF REVIEW

An action to set aside a trustee's sale and to quiet title sounds in equity. See, *Burk v. Demaray*, 264 Neb. 257, 646

N.W.2d 635 (2002); 1 Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 7.22 (3d ed. 1993). In an appeal of an equitable action, an appellate court tries factual questions de novo on the record and reaches a conclusion independent of the findings of the trial court, provided, where credible evidence is in conflict on a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Stoetzel & Sons v. City of Hastings*, 265 Neb. 637, 658 N.W.2d 636 (2003).

▮ Deeds of trust are subject to the principles of interpretation and construction that govern contracts generally. See, *Cache Nat. Bank v. Lusher*, 882 P.2d 952 (Col. 1994); *Starcrest Trust v. Berry*, 926 S.W.2d 343 (Tex. App. 1996). Accordingly, the construction of a trust deed is a matter of law, and an appellate court has an obligation to reach an independent, correct conclusion irrespective of the determinations made by the court below. Cf. *Reichert v. Rubloff Hammond, L.L.C.*, 264 Neb. 16, 645 N.W.2d 519 (2002) (stating same rule for construction of contracts).

▮ Statutory interpretation presents a question of law, on which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the court below. *In re Interest of J.K.*, 265 Neb. 253, 656 N.W.2d 253 (2003).

## V. ANALYSIS

### 1. SETTING ASIDE TRUSTEE'S SALE

Before 1965, Nebraska did not allow power of sale foreclosure, and any attempted extrajudicial sale of real property, for the satisfaction of a mortgage, was absolutely void. *Cullen v. Casey*, 1 Neb. (Unoff.) 344, 95 N.W. 605 (1901). Because trust deeds were treated as mortgages, the same rule applies to them, even if the trust deed in question contained a power of sale. See *Comstock v. Michael*, 17 Neb. 288, 22 N.W. 549 (1885).

In 1965, the Legislature altered the landscape of real estate financing when it passed the Act. The Act specifically authorized the use of power of sale foreclosure for trust deeds. See § 76-1005. We stated:

> [The Act] authorizes the use of trust deeds to secure the performance of obligations and prescribes, generally, the

procedures for their execution and enforcement. The [A]ct provides that a trust deed may confer a power of sale upon the trustee. In the event of a default, the trust property may be sold by the trustee to satisfy the obligation secured. The [A]ct also provides for the substitution of trustees, reinstatement after default, and the procedure for the sale and conveyance of the trust property by the trustee.

. . . .

The . . . Act authorizes the use of a security device which was not available prior to its enactment. The [A]ct permits the use of an instrument which may be foreclosed by sale without the necessity of judicial proceedings. It authorizes and permits a method of financing which was not formerly available, since trust deeds have been considered to be subject to the same rules and restrictions as mortgages.

*Blair Co. v. American Savings Co.*, 184 Neb. 557, 558-59, 169 N.W.2d 292, 293-94 (1969). By authorizing the use of power of sale foreclosure, the Legislature provided lenders with a remedy for recovering their collateral that is quicker and less expensive than judicial foreclosure.

■ Here, however, Cynthia claims that the trustee's sale should be set aside because it did not comply with the Act and the terms of the trust deed. Although the Act does not provide a remedy for a defective trustee's sale, the trustor can sue in equity to set the sale aside. See 1 Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 7.22 (3d ed. 1993). This is our first opportunity to determine when equity will grant such relief.

Cynthia argues that the use of the power of sale in a trust deed must strictly adhere to both the requirements of the Act and the trust deed's terms and that failure to do so renders the sale void. We disagree. The Act provides lenders with a remedy for recovering collateral that is quicker and less expensive than judicial foreclosure. The rule advanced by Cynthia would render that remedy unworkable; any error by the trustee, no matter how trivial, would void the sale. The resulting uncertainty and increased chance of litigation would deter bidders from participating at sales and lead lenders to choose judicial foreclosure. See *Rosenberg v. Smidt*, 727 P.2d 778 (Alaska 1986) (Moore, J., dissenting).

Not surprisingly, other jurisdictions that allow power of sale foreclosure have refused to adopt a rule that would set aside every sale that does not strictly comply with the requirements of the trust deed or relevant statutes. See, e.g., *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.*, 85 Cal. App. 4th 1279, 102 Cal. Rptr. 2d 711 (2001); *J. Ashley v. Burson*, 131 Md. App. 576, 750 A.2d 618 (2000); *Coventry Credit Union v. Trafford*, 764 A.2d 179 (R.I. 2000); *VHDA v. Fox Run*, 255 Va. 356, 497 S.E.2d 747 (1998); *Manard v. Williams*, 952 S.W.2d 387 (Mo. App. 1997); *Garris v. Federal Land Bank of Jackson*, 584 So. 2d 791 (Ala. 1991); *Occidental/Nebraska Fed. Sav. v. Mehr*, 791 P.2d 217 (Utah App. 1990). See, also, 1 Nelson & Whitman, *supra*; 12 Thompson on Real Property § 101.04(c)(2) (David A. Thomas ed. 1994).

Instead, courts and commentators have recognized three categories of defects in a trustee's sale conducted under a power of sale in a trust deed: (1) those that render the sale void, (2) those that render the sale voidable, and (3) those that are inconsequential. See, *Manard, supra*; 1 Nelson & Whitman, *supra*; 12 Thompson on Real Property, *supra*.

The first category consists of those defects that render a sale void. When a sale is void, "no title, legal or equitable, passes to the sale purchaser or subsequent grantees." 1 Nelson & Whitman, *supra*, § 7.20 at 613. In other words, "adversely affected parties may have the sale set aside even though the property has passed into the hands of a bona fide purchaser." 12 Thompson on Real Property, *supra*, § 101.04(c)(2)(i) at 402.

Defects that render a sale void are rare and generally occur when the trustee conducted the sale, but no right to exercise the power of sale existed. See, *Williams v. Kimes*, 996 S.W.2d 43 (Mo. 1999); 1 Nelson & Whitman, *supra*; 12 Thompson on Real Property, *supra*. Typical examples include situations when (1) no default on the underlying obligation has occurred, (2) the trust deed is a forgery, and (3) the trust deed requires the beneficiary to request that the trustee commence foreclosure proceedings and no request has been made. See *Manard, supra*. Further, even if there is a right to exercise the power of sale, an egregious failure to comply with fundamental procedural requirements

while exercising the power of sale will render the sale void. See *Graham v. Oliver*, 659 S.W.2d 601 (Mo. App. 1983).

 The second category of defects consists of those that render the sale voidable. See *Manard, supra*. When a defect renders a sale voidable, "bare legal title passes to the sale purchaser." 1 Grant S. Nelson & Dale A. Whitman, Real Estate Finance Law § 7.20 at 614 (3d ed. 1993). See *Graham, supra*. An injured party can have the sale set aside only so long "as the legal title has not moved to a bona fide purchaser." 12 Thompson on Real Property, *supra*, § 101.04(c)(2)(ii) at 403.

 The final category consists of those defects that are so inconsequential as to render the sale neither void nor voidable. 1 Nelson & Whitman, *supra*; 12 Thompson on Real Property, *supra*. See, also, *Manard, supra*; *Rosenberg v. Smidt*, 727 P.2d 778 (Alaska 1986). When the party seeking to set aside the sale establishes only an inconsequential defect, equity will not set aside the sale.

Courts have offered a variety of tests for determining when a defect becomes more than inconsequential and renders a sale voidable. See, e.g., *J. Ashley v. Burson*, 131 Md. App. 576, 750 A.2d 618 (2000) (requiring party attacking sale to show error was harmful or affected substantial rights); *Manard v. Williams*, 952 S.W.2d 387, 392 (Mo. App. 1997) (stating that " '[a]n irregularity in the execution of a foreclosure sale must be substantial or result in a probable unfairness to suffice as a reason for setting aside a voidable trustee's deed' ") (quoting *Kennon v. Camp*, 353 S.W.2d 693 (Mo. 1962)); *Occidental/Nebraska Fed. Sav. v. Mehr*, 791 P.2d 217, 221 (Utah App. 1990) (stating that "[a] sale once made will not be set aside unless the interests of the debtor were sacrificed or there was some fraud or unfair dealing"); *Concepts, Inc. v. First Sec. Realty Serv.*, 743 P.2d 1158, 1159 (Utah 1987) (stating that "remedy of setting aside the sale will be applied only in cases which reach unjust extremes"). *Farmers' Sav. Bank v. Murphree*, 200 Ala. 574, 575, 76 So. 932, 933 (1917) (stating that "[e]quity does not set aside foreclosure sales merely for trifling irregularities in notice or procedure, which do not appear capable of prejudice to the mortgagor, or those claiming under him"). A review of these cases, however, reveals a common theme: Courts will view a defect as voidable

if the party seeking to set aside the sale shows that prejudice was suffered because of the defect.

We agree with this reasoning and hold that to establish a defect that renders the trustee's sale voidable, the party seeking to set aside the sale must show not only the defect, but also that the defect caused the party prejudice. If the party did not suffer any harm from the alleged defect, there is no justification for imposing the additional costs associated with setting aside the sale.

We note that in addition to the analysis we have set out above, the Act allows the trustee's deed to confer additional protection against attacks on the sale. Section 76-1010(1) provides in part:

> The trustee's deed may contain recitals of compliance with the requirements of sections 76-1001 to 76-1018 relating to the exercise of the power of sale and sale of the property described therein, including recitals concerning any mailing, personal delivery and publication of the notice of default, any mailing and the publication and posting of notice of sale, and the conduct of sale; and such recitals shall constitute prima facie evidence of such compliance and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

Section 76-1010(1) allows for an affirmative defense whereby bona fide purchasers and encumbrancers for value and without notice can use the recitals in the trustee's deed to defeat any claim that the sale did not comply with "the requirements of sections 76-1001 to 76-1018 relating to the exercise of the power of sale and sale of the property described therein." Here, however, Ryberg, Cummins, and Huber have not raised the recitals as a defense, and we need not consider the implications of § 76-1010(1).

We now address whether Cynthia established a defect in the sale that warrants setting the sale aside. In the proceedings below, Cynthia claimed several defects in the sale, but she has only preserved three of those claims on appeal. We analyze each of these claims separately.

### (a) Notice of Default

Cynthia argues that the notice of default failed to comply with the requirements of the Act because it did not adequately set forth

the nature of the underlying breach that triggered the use of the power of sale. To exercise the power of sale in a trust deed, the trustee must first file a notice of default with the register of deeds in each county where "the trust property or some part or parcel thereof is situated." § 76-1006(1). This section sets out what the notice of default must contain. Every notice of default, regardless of the type of property secured by the trust deed, must identify

> the trust deed by stating the name of the trustor named therein and giving the book and page or computer system reference where the same is recorded and a description of the trust property, containing a statement that a breach of an obligation for which the trust property was conveyed as security has occurred, and *setting forth the nature of such breach* and of [the trustee's] election to sell or cause to be sold such property to satisfy the obligation.

(Emphasis supplied.) *Id.* Cynthia argues that the notice of default filed by Ryberg did not sufficiently set forth the " 'nature of such breach' " because the only description it gave was " 'non-payment.' " Brief for appellant at 16.

Subsection 76-1006(1) is silent on what specificity is required in setting out the nature of the breach. Cynthia contends that § 76-1006(1), when read in pari materia with the other provisions of the Act, requires "the trustor to have notice of the nature of the default sufficient to advise the trustor of the amount of money that must be paid, or the necessary actions that must be taken, to give the trustor meaningful opportunity to cure the default." Brief for appellant at 18. Cynthia contends that the notice of default must contain information on how to cure the default. Section 76-1006(1), however, demonstrates that the Legislature considered the "nature of such breach" and how to cure the breach as different concepts.

A court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless. *Sydow v. City of Grand Island*, 263 Neb. 389, 639 N.W.2d 913 (2002). It is the role of the court, to the extent possible, to give effect to the entire language of a statute, and to reconcile different provisions of the statute so they are consistent, harmonious, and sensible. *State v. Divis*, 256 Neb. 328, 589 N.W.2d 537 (1999).

In drafting the Act, the Legislature set up additional procedural requirements for foreclosure by trustee's sale on trust property used in farming operations by the borrower outside of any incorporated city or village (which, for ease of reference, we will call agricultural property). Among these requirements is that the notice of default must set forth additional information. Section 76-1006(2) provides in part:

> If the trust property is used in farming operations carried on by the trustor, not in any incorporated city or village, the notice of default also sets forth:
>
> (a) A statement that the default may be cured within two months of the filing for record of the notice of default and the obligation and trust deed may be thereby reinstated as provided in section 76-1012.

Thus, a notice of default for agricultural property must contain information on how to cure the default. If the Legislature believed, as Cynthia argues, that information on how to cure a default was subsumed in the phrase "the nature of such breach," it would have been unnecessary for it to set out the additional requirements in § 76-1006(2) for trust deeds on agricultural property.

We determine that for nonagricultural property, the notice of default need not contain information on how to cure the default. Rather, we interpret the phrase "the nature of such breach" to require the notice of default to describe the event that has triggered the use of the power of sale in the trust deed. Here, Cynthia failed to make the required payments under the note, and this failure authorized the use of the power of sale. The notice of default provided that "a breach of the obligation of the Trustor for which such Deed of Trust was made has occurred, to wit: non-payment." The notice of default provided sufficient information to notify interested parties of the event authorizing the use of the power of sale, and therefore, the notice of default satisfied § 76-1006(1).

### (b) Delay in Receiving Payment

On the day of the sale, Huber paid 10 percent of his winning bid by cashier's check. He paid the balance 9 days later. Cynthia claims that by allowing Huber 9 days to make payment, Ryberg violated the trust deed which required the trustee to sell the

property to *"the highest bidder for cash in lawful money of the United States payable at the time of sale."* She also claims Ryberg violated § 76-1010(1) which provides that "the purchaser at the sale shall *forthwith* pay the price bid." (Emphasis supplied.)

In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Newman v. Thomas*, 264 Neb. 801, 652 N.W.2d 565 (2002). "Forthwith" has been given several meanings. Black's Law Dictionary 654 (6th ed. 1990) provides the following definitions:

> Immediately; without delay; directly; within a reasonable time under the circumstances of the case; promptly and with reasonable dispatch. . . . Within such time as to permit that which is to be done, to be done lawfully and according to the practical and ordinary course of things to be performed or accomplished. The first opportunity offered.

Similarly, Webster's Third International Dictionary, Unabridged 895 (1993) provides: "1: with dispatch: without delay: within a reasonable time . . . . IMMEDIATELY 2: immediately after some preceding event: THEREUPON." Cynthia equates "forthwith," as used in § 76-1010(1), with "immediately." We conclude, however, that "within a reasonable time under the circumstances of the case" is more consistent with the underlying purpose of § 76-1010. See Black's Law Dictionary, *supra* at 654.

In discerning the meaning of a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Newman, supra.* A court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat that purpose. *Galaxy Telecom v. J.P. Theisen & Sons*, 265 Neb. 270, 656 N.W.2d 444 (2003).

Most of the provisions of the Act are designed to ensure that the trustor's interest in the property is not unfairly foreclosed. But by using the term "forthwith" in § 76-1010(1), the Legislature meant to protect the beneficiary, not the trustor. The use of the term was meant to ensure that the winning bidder could be compelled to promptly pay the bid. If there were no time provision,

the winning bidder could indefinitely frustrate the foreclosure by claiming that they were gathering the necessary funds.

The use of "forthwith" in § 76-1010(1) does not contemplate the rigidity of immediate payment. In some circumstances, the beneficiary will not be concerned with the ability of the winning bidder to pay. In other situations, a short delay will enable a bidder to secure additional funds and cover a higher bid—something that may benefit both the beneficiary and the trustor. We conclude that while the Legislature meant to impose a time limit by using "forthwith" in § 76-1010(1), that time limit was not as definite as Cynthia claims. Rather, the term requires the purchaser to pay the amount of its bid within a reasonable time under the circumstances of the case. Further, we construe the phrase "at the time of sale" as used in the trust deed as being consistent with the construction that we have given "forthwith."

Here, Cummins and Huber were closely aligned. At oral argument, Cummins conceded that Huber was a straw man for Cummins. We conclude that Huber, consistent with the Act and the terms of the trust deed, paid the amount of his bid within a reasonable time under the circumstances of the case.

### (c) Payment by Personal Check

The trust deed required Ryberg to sell the property to the highest bidder "for cash in lawful money of the United States." Cynthia argues that this provision precluded Ryberg from allowing Huber to pay by personal check. We agree that Ryberg erred in allowing Huber to pay by personal check, but we refuse to set aside the sale because Cynthia failed to show that the error caused her prejudice.

Trust deeds are subject to the principles of interpretation and construction that govern contracts generally. See, *Starcrest Trust v. Berry*, 926 S.W.2d 343 (Tex. App. 1996); *Cache Nat. Bank v. Lusher*, 882 P.2d 952 (Col. 1994). Cf. *County of Keith v. Fuller*, 234 Neb. 518, 526, 452 N.W.2d 25, 31 (1990) (stating that "rules governing the interpretation of contracts are applicable to mortgages"). The terms of an instrument are to be accorded their plain and ordinary meaning as ordinary, average, or reasonable persons would understand them. *County of Keith, supra.*

"Cash" is a fluid term, the meaning of which turns on the context in which it is used. See, e.g., *Kutche Chevrolet v. Anderson Banking*, 597 N.E.2d 1307 (Ind. App. 1992) (remanding for extrinsic fact finding to determine whether personal check was "cash down payment" as that term was used in installment contract on automobile); *National Diamond Syndicate, Inc. v. UPS*, 897 F.2d 253 (7th Cir. 1990) (holding that extrinsic evidence showed that "cash only" c.o.d. delivery contract allowed shipper to accept certified checks); *Perry v. West*, 110 N.H. 351, 266 A.2d 849 (1970) (holding that certified check was not "cash" as that term was used in notice of sale for municipal sale of property for failure to pay taxes). Within the context of foreclosure sales and analogous situations, courts have generally treated the term "cash" as including coins, currency, cashier's checks, or certified funds, but not personal checks. See, *Boatman's Bank v. Community Interiors, Inc.*, 721 S.W.2d 72 (Mo. App. 1986); *Greenberg v. Alter Company*, 255 Iowa 899, 124 N.W.2d 438 (1963).

This interpretation of "cash" balances the needs of the beneficiary and the trustor. It ensures that bidders are required to make payment in a manner that provides some guarantee of their ability to pay, which is advantageous to beneficiaries. But also, it does not require bidders to show up at the sale with a suitcase full of $20 bills—an impractical limitation which would deter potential bidders from participating in the sale.

Here, it is undisputed that Ryberg allowed Huber to pay the balance of his bid by personal check, and we agree with the district court that the sale did not strictly comply with the terms of the trust deed. But as we have set out above, and as the district court recognized, that does not end the inquiry. We must determine whether the error rendered the sale void or voidable.

The error that Ryberg committed does not rise to the level of a fundamental procedural defect that would render a trustee's sale void. The question then is whether the error caused prejudice to Cynthia, thereby rendering the sale voidable.

The prejudice which a party must show in seeking to establish a voidable defect in a trustee's sale varies depending upon the alleged defect. Here, the alleged error was how Ryberg managed the sale. Generally, when the defect was in the trustee's

management of the sale, courts have focused on the effect that the defect had on the bidding. See, *Coventry Credit Union v. Trafford*, 764 A.2d 179 (R.I. 2000); *Country Express Stores v. Sims*, 87 Wash. App. 741, 943 P.2d 374 (1997). If the defect did not result in a reduced sales price, courts have refused to set aside the sale. But when the defect "chilled the bidding," i.e., deterred bidders from coming to the sale or deterred those bidders at the sale from bidding, courts have granted relief from the sale. See 12 Thompson on Real Property § 101.04(c)(2)(ii) at 404 (David A. Thomas ed. 1994).

Cynthia presented no direct evidence that Ryberg's decision allowing Huber to pay by personal check deterred bidders from coming to the sale or deterred those bidders at the sale from bidding. We recognize, however, that often it will be difficult to identify credible witnesses willing to testify that but for the trustee's error, they would have come to the sale and bid higher than the sale price. Thus, we conclude that the party seeking to set aside the sale need not necessarily present such direct evidence. Rather, the party may meet its burden by establishing that (1) the defect, by its nature, would have a tendency to result in a reduced sale price and (2) the sale price was inadequate.

Here, Cynthia failed to show that Ryberg's decision allowing Huber to pay the balance of his bid by personal check was the type of defect which would have had a tendency to reduce the sale price. Requiring that the high bidder pay in cash protects the beneficiary by ensuring that "a winning bidder is able to pay the purchase price so that a debtor cannot indefinitely frustrate a foreclosure sale." *Boatmen's Bank v. Community Interiors, Inc.*, 721 S.W.2d 72, 77 (Mo. App. 1986). But such restrictions on the method of payment tend to limit the amount of bidding, because as the terms of payment become less flexible, the field of potential bidders becomes smaller. Thus, when the trustee violates a cash-only requirement and allows bidders to pay by personal check or credit, the number of potential bidders grows, thereby increasing the possibility for a higher sale price. Thus, there is a greater chance that junior lienholders will be paid off or that the trustor will recover at least some of its equity in the property. See, *Martin v. Lorren*, 890 S.W.2d 352 (Mo. App. 1994) (refusing to set aside sale when notice of sale called for

cash sale, but successful bidder paid partly by check and partly by funds borrowed from creditor-beneficiary); *Boatmen's Bank, supra*; *Farmers' Sav. Bank v. Murphree*, 200 Ala. 574, 575-76, 76 So. 932, 933-34 (1917) (stating that "it is fully settled by our decisions, since the extension of credit to the purchaser rather tends to increase the number of bidders and enhance the price, that even a sale on credit, though expressly authorized for cash, is no ground for setting aside the sale"). See, also, *Adcock v. Berry*, 194 Ga. 243, 21 S.E.2d 605 (1942). Having failed to show that Ryberg's decision allowing Huber to pay by personal check caused Cynthia any prejudice, she was not entitled to have the sale set aside.

## 2. Motion for Continuance

Cynthia also argues that the trial court erred in denying her motion for a continuance. Generally, a motion for a continuance is addressed to the discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion. *Weiss v. Weiss*, 260 Neb. 1015, 620 N.W.2d 744 (2001). See, also, Neb. Rev. Stat. § 25-1148 (Reissue 1995).

Based on the sparse record Cynthia presents to us, we determine the court did not abuse its discretion in denying her motion for a continuance. Neither the motion for a continuance nor the supporting affidavits appear in the record. It appears that at the hearing, the only arguments Cynthia made focused on discovery difficulties that had arisen because Huber had become ill. The record, however, suggests that those issues were resolved before trial.

Cynthia now argues that the court moved the litigation along at a hurried pace, forcing her to withdraw two claims for damages because she was unable to secure expert testimony. Before testimony began on the day of the trial, Cynthia's counsel asked the court to clarify if her motion for a continuance had been overruled. The court stated, "Well, as I understand it, counsel have agreed that . . . Huber's deposition can be taken. . . . Ryberg's deposition was taken. What else do you need?" In response, Cynthia withdrew two causes of action, one for breach of fiduciary duty and one for unjust enrichment. But the record does not support Cynthia's contention that she withdrew the

causes of action because she was unable to obtain expert testimony; instead, it suggests that Cynthia believed the March 7, 2002, trial would address only how title should be quieted and that the issues in the two causes of action she was withdrawing would arise only if the court quieted title in her.

We also note that the record suggests that Cynthia engaged in questionable delaying tactics: She was noncooperative in scheduling depositions, and when Ryberg did schedule the depositions, she failed to appear, resulting in the imposition of sanctions. Given this pattern of delay and Cynthia's failure to adequately explain to the district court why she needed more time to prepare for trial, we determine that the court did not abuse its discretion in denying her motion for a continuance.

## VI. CONCLUSION

Cynthia failed to establish a prejudicial defect in the trustee's sale, and the district court correctly refused to set aside the sale. Further, the district court did not abuse its discretion in refusing to grant a continuance.

AFFIRMED.