Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/22/2018 08:18 AM CDT

- 497 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

First National Bank North Platte, a national banking
association, appellee, v. Jose A. Cardenas and
Christina Cardenas, husband and wife, and
Joya de Andalucia Farms, LLC, a Nebraska
limited liability company, appellants.

___ N.W.2d ___

Filed March 30, 2018.    No. S-17-360.

1. **Verdicts: Juries: Appeal and Error.** An appellate court will set aside a jury verdict because of insufficient evidence only if the verdict is clearly wrong.

2. **Verdicts: Appeal and Error.** In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence.

3. ____: ____. A jury verdict will be upheld if there is competent evidence presented to the jury upon which it could reasonably find for the successful party.

4. **Jury Instructions: Appeal and Error.** Whether a jury instruction is correct is a question of law, which an appellate court independently decides.

5. **Motions for New Trial: Damages: Appeal and Error.** Pursuant to Neb. Rev. Stat. § 25-1912.02(2) (Reissue 2016), when an action has been tried before a jury, a motion for a new trial shall be a prerequisite to obtaining appellate review of the issue of inadequate or excessive damages.

6. **Jury Instructions: Pleadings: Evidence.** A litigant is entitled to have the jury instructed upon only those theories of the case which are presented by the pleadings and which are supported by competent evidence.

7. **Jury Instructions: Proof: Appeal and Error.** To establish reversible error from a court's failure to give a requested jury instruction, an

- 498 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.

8. **Jury Instructions: Appeal and Error.** It is not error for a trial court to refuse a requested instruction if the substance of the proposed instruction is contained in those instructions actually given.

9. ____: ____. If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no prejudicial error concerning the instructions and necessitating a reversal.

10. **Statutes: Intent.** When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language, understood in context.

11. ____: ____. A court ascertains the meaning of a statute by reading it in pari materia, in light of the broader structure of the relevant act and related statutes.

12. **Juries: Verdicts: Presumptions.** Because a general verdict does not specify the basis for an award, Nebraska law presumes that the winning party prevailed on all issues presented to the jury.

Appeal from the District Court for Lincoln County: Donald E. Rowlands, Judge. Affirmed.

Luke T. Deaver and Taylor A. L'Heureux, of DeWald Deaver, P.C., L.L.O., for appellants.

David W. Pederson and Matthew D. Pederson, of Pederson & Troshynski, for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, and Funke, JJ.

Cassel, J.

## I. INTRODUCTION

After a bank lender exercised powers of sale under deeds of trust, it sought to recover a deficiency owed by the borrowers. The borrowers appeal from a jury verdict in favor of the bank. Because the borrowers failed to move for a new trial, we cannot review their assertion that excessive damages were awarded, but we examine and reject their argument that the

- 499 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

evidence was insufficient to support the jury's verdict. We also find no error in the trial court's refusal to give the borrowers' requested jury instructions. Accordingly, we affirm.

## II. BACKGROUND

### 1. Move to North Platte

In 2006, Jose A. Cardenas and Christina Cardenas moved to North Platte, Nebraska, where Jose began working as a neurologist. Jose and Christina purchased 127 acres of land on which to build a house. They obtained a loan from First National Bank North Platte (FNBNP) for the purchase of the land. The 127 acres were ultimately divided into three parcels: a 57-acre tract (the pasture tract), a 20-acre tract (the house tract), and a 50-acre tract (the barn tract). After purchasing the land, Jose and Christina obtained a loan from FNBNP for the construction of their house.

Christina purchased two Andalusian horses. She planned to provide horse riding and polo lessons and to operate a horse breeding business. Jose and Christina formed a Nebraska limited liability company to conduct their horse business (the LLC). Christina was the sole member of the LLC. Jose, Christina, and the LLC (collectively the Cardenases) constructed on their property a barn, indoor stable, and horse breeding area, financed by FNBNP. The Cardenases also financed the purchase of Andalusian breeding stallions and a horse trailer.

The Cardenases obtained multiple loans from FNBNP, which were refinanced multiple times. These promissory notes were secured by a variety of collateral, including their real property through several deeds of trust.[1] The details of these notes and deeds of trust will be expanded later in this opinion.

### 2. Move to Kentucky

The LLC never became profitable. The Cardenases' tax returns showed a loss from the LLC of over $100,000 most

---

[1] See Neb. Rev. Stat. §§ 76-1001 to 76-1018 (Reissue 2009) (Nebraska Trust Deeds Act).

- 500 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

years. Jose's annual income as a neurologist increased to over $400,000.

In 2012, Jose and Christina moved from Nebraska to Kentucky. They decided that the climate in Nebraska was not conducive to the Andalusian breed of horses and that the LLC was unlikely to be successful in Nebraska. Jose was able to obtain employment as a neurologist in Kentucky.

The Cardenases listed for sale all of their real property— the house tract, the barn tract, and the pasture tract—for $855,000. After receiving no written offers, they relisted the house tract and the barn tract (not including the pasture tract) for $774,000. The Cardenases received only one offer for the property at $300,000, which they did not accept.

### 3. FNBNP Trustee's Sales

In February 2013, the president of FNBNP demanded that the Cardenases pay their loans in full within 10 days due to their failure to make installment payments. As a statutory prerequisite to exercising its power of sale under the trust deeds that secured the Cardenases' real property, FNBNP sent them a notice of default in March. This first notice of default pertained to the trust deeds securing the house tract. It provided the Cardenases 1 month to cure the default by repaying their debt in full. In May, FNBNP sent a second notice of default to the Cardenases with regard to the trust deeds securing the barn tract and the pasture tract, giving them 2 months to cure the default.

In May 2013, FNBNP exercised its power of sale as trustee under the trust deed and sold the house tract at auction. The bank bid $380,000 and was the only bidder. The bank issued itself a trustee's deed from the sale.

In September 2013, FNBNP sold the barn tract and the pasture tract. The bank purchased the property at auction for $100,000.

### 4. Litigation Ensues

In April 2013, FNBNP filed a replevin action in Kentucky to recover horses and other personal property collateral that

- 501 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

had been moved to Kentucky. In August, the Kentucky court granted FNBNP's motion for summary judgment, based on three of the loans from FNBNP to the Cardenases, in the amount of $476,612.02.

In July 2013, following the trustee's sale of the house tract, FNBNP filed a deficiency action against the Cardenases in the district court for Lincoln County, Nebraska. In September, after the remaining property was sold separately by trustee's sale, FNBNP filed a second deficiency action. The two cases were consolidated prior to trial.

The consolidated cases were tried to a jury. The jury returned a verdict for FNBNP in the amount of $171,162.66—the amount it had requested. The district court entered judgment in accordance with the jury verdict. The Cardenases did not file a motion for new trial, but they filed a timely appeal from the judgment.

## III. ASSIGNMENTS OF ERROR

The Cardenases assign that the district court erred by (1) "awarding an excessive verdict for [FNBNP] that was unsupported by the evidence" and (2) refusing their requested jury instructions on (a) FNBNP's duty to comply with the Farm Mediation Act,[2] (b) FNBNP's failure to comply with § 76-1012 and the terms under the deed of trust by denying the Cardenases their right to cure the defaults, and (c) whether FNBNP "bid the fair market value of each of the properties at both of the foreclosure sales as required under . . . § 76-1013."

## IV. STANDARD OF REVIEW

[1-3] An appellate court will set aside a jury verdict because of insufficient evidence only if the verdict is clearly wrong.[3] In determining the sufficiency of the evidence to sustain a verdict in a civil case, an appellate court considers the evidence

---

[2] See Neb. Rev. Stat. §§ 2-4801 to 2-4815 (Reissue 2012).

[3] See *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017).

- 502 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

most favorably to the successful party and resolves evidential conflicts in favor of such party, who is entitled to every reasonable inference deducible from the evidence.[4] A jury verdict will be upheld if there is competent evidence presented to the jury upon which it could reasonably find for the successful party.[5]

[4] Whether a jury instruction is correct is a question of law, which an appellate court independently decides.[6]

## V. ANALYSIS

### 1. Sufficiency of Evidence to Support Amount of Damages

The Cardenases assign that the district court "erred in awarding an excessive verdict for [FNBNP] that was unsupported by the evidence." They argue that FNBNP's calculation of the amount they still owed was inaccurate because it failed to offset the second trustee's sale in the amount of $100,000. However, the Cardenases' failure to file a motion for new trial precludes review for excessive damages and limits our examination to the sufficiency of the evidence. As we explain below, the evidence was sufficient.

### (a) Additional Facts

At trial, FNBNP introduced into evidence the five different notes signed by the Cardenases on which it based its claims. It presented multiple bank records showing amounts still owing. Jose admitted that they could not keep up with payments and did not make any payments after February 2013. FNBNP presented the testimony of multiple bank employees who stated that the amount due and owing after the trustee's sales, calculated with interest as of the time of trial, was $171,162.66.

---

[4] *Pierce v. Landmark Mgmt. Group*, 293 Neb. 890, 880 N.W.2d 885 (2016).

[5] See *ACI Worldwide Corp. v. Baldwin Hackett & Meeks, supra* note 3.

[6] *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015).

- 503 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

After the jury returned a verdict in favor of FNBNP, the court entered judgment accordingly. The Cardenases did not move for a new trial.

(b) Application

[5] Neb. Rev. Stat. § 25-1912.01(2) (Reissue 2016) provides:

When an action has been tried before a jury a motion for a new trial shall not be a prerequisite to obtaining appellate review of the sufficiency of the evidence, *but a motion for a new trial shall be a prerequisite to obtaining appellate review of the issue of inadequate or excessive damages*.

(Emphasis supplied.) The Cardenases' first assignment of error melds a claim of insufficient evidence with one that damages were excessive. Because "a motion for a new trial [is] a prerequisite to obtaining appellate review of the issue of . . . excessive damages,"[7] that issue is not properly before us. Thus, we review only the sufficiency of the evidence to support the jury's verdict in favor of FNBNP.

There was undoubtedly sufficient evidence upon which the jury could find in favor of FNBNP. The Cardenases did not dispute that they borrowed money from FNBNP. They did not dispute that they failed to pay those loans. What they disputed was the amount still due. Viewing the evidence in the light most favorable to FNBNP and giving it the benefit of every reasonable inference deducible from the evidence, FNBNP clearly presented sufficient evidence upon which the jury could have reasonably found that a deficiency was still owed by the Cardenases after the trustee's sale. Under our clear error standard of review, this assignment of error fails.

For the sake of completeness, we note the Cardenases' argument relies upon a misunderstanding. The $100,000 from the second trustee's sale, which the Cardenases claim is unaccounted for in FNBNP's requested damages, was in

---

[7] § 25-1912.01(2).

- 504 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

fact credited to the accounts of two of the notes on which the Kentucky court granted judgment. After $6,000 was withheld for estimated sales expenses, a $47,000 credit for the sale was included on the accounts of each of these two notes. Thus, the $100,000 from the second trustee's sale has been credited in partial satisfaction of the Kentucky judgment. FNBNP did not reduce its calculation of the amount it was due in the Nebraska deficiency action by $100,000, because it had already reduced its calculation by the amounts owed on the notes subject to judgment from the Kentucky litigation, which notes those proceeds were credited toward.

## 2. Jury Instructions

The Cardenases' remaining assignments of error all address jury instructions that they proposed and the district court refused. The legal rules governing these assignments are well settled, and as they apply to all three assignments, we begin by recalling them.

[6-9] A litigant is entitled to have the jury instructed upon only those theories of the case which are presented by the pleadings and which are supported by competent evidence.[8] To establish reversible error from a court's failure to give a requested jury instruction, an appellant has the burden to show that (1) the tendered instruction is a correct statement of the law, (2) the tendered instruction was warranted by the evidence, and (3) the appellant was prejudiced by the court's failure to give the requested instruction.[9] It is not error for a trial court to refuse a requested instruction if the substance of the proposed instruction is contained in those instructions actually given.[10] If the instructions given, which are taken as a whole, correctly state the law, are not misleading, and adequately cover the issues submissible to a jury, there is no

---

[8] *Armstrong v. Clarkson College*, 297 Neb. 595, 901 N.W.2d 1 (2017).

[9] *Id.*

[10] *Id.*

- 505 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

prejudicial error concerning the instructions and necessitating a reversal.[11]

### (a) Farm Mediation Act

The Cardenases assign that the district court "erred by failing to instruct the jury on [FNBNP's] duty to comply with the Farm Mediation Act." Specifically, they claim that the court should have given the jury their requested instruction on FNBNP's alleged failure to provide them notice of the availability of mediation as required by § 2-4807(1).

However, Jose and Christina do not meet the statutory definition of "[b]orrower"[12] for purposes of § 2-4807(1). And only three notes were in the record on which the LLC was a borrower. These three notes were subject to judgment from the litigation in Kentucky, but were not the basis of the deficiency judgment sought by FNBNP in the case before us. Thus, the evidence did not support the giving of the Cardenases' requested jury instruction.

### (i) Additional Facts

The Cardenases refinanced multiple times their loans for the land, residence, barn, horses, and other expenses and equipment. There were approximately 31 separate notes between the Cardenases and FNBNP. These notes were secured by a variety of collateral, including the Cardenases' real property, which was secured by various deeds of trust. However, FNBNP's complaints and the evidence presented at trial identify five outstanding loans:
- note No. xxx243, a $399,000 note executed on January 25, 2008, on which Jose was the sole borrower;
- note No. xxx521, a $215,700 note executed on January 2, 2009, which was a Small Business Administration loan made to the LLC with separate guarantees by Jose and Christina;

---

[11] *Id.*

[12] See § 2-4802(2).

- 506 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

- note No. xxx541, a $110,000 note executed on January 2, 2009, which was also a Small Business Administration loan made to the LLC with separate guarantees by Jose and Christina;
- note No. xxx332, a $118,977 note executed on January 13, 2009, which listed Jose and Christina as borrowers; and
- note No. xxx261, a $174,305 note executed on November 30, 2010, which listed the Cardenases as borrowers.

FNBNP's complaints state that as a result of the Kentucky litigation, they received summary judgment on notes Nos. xxx521, xxx541, and xxx261. Its complaints and testimony at trial were that the $171,162.66 it claimed was owed it by the Cardenases was based on the amount due on note No. xxx332, plus accrued interest. The borrowers on that note were Jose and Christina only.

At trial, FNBNP introduced tax returns from the Cardenases. The gross income of the LLC was never greater than the gross income from Jose's wages.

The Cardenases requested that the court instruct the jury that the failure to provide notice of the availability of mediation pursuant to § 2-4807 of the Farm Mediation Act was an affirmative defense. The court did not give this requested instruction, but instead told the jury that it must accept as true the court's legal conclusion that FNBNP "was not required to participate in mediation with the [Cardenases] under the Farm Mediation Act."

*(ii) Application*

The Farm Mediation Act at § 2-4807(1) provides:

At least thirty days prior to the initiation of a proceeding on an agricultural debt in excess of forty thousand dollars, a creditor, except as provided in subsection (2) or (3) of this section, shall provide written notice directly to the borrower of the availability of mediation and the address and telephone number of the farm mediation service in the service area of the borrower.

- 507 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

"Creditor" is defined as "any individual, organization, cooperative, partnership, limited liability company, trust, or state or federally chartered corporation to whom an agricultural loan is owed."[13] "Borrower" is defined as "an individual, limited liability company, corporation, trust, cooperative, joint venture, or other entity entitled to contract who is engaged in farming or ranching, who derives more than fifty percent of his or her gross income from farming or ranching, and who holds an agricultural loan."[14] Section 2-4802 does not define "agricultural loan" or "agricultural debt."

While creditors subject to § 2-4807 are required to provide notice of the availability of mediation, participation in mediation is optional. The Farm Mediation Act at § 2-4808(2) provides in part:

The parties shall not be required to attend any mediation meetings under this section, and failure to attend any mediation meetings or to participate in mediation under this section shall not affect the rights of any party in any manner. Participation in mediation under this section shall not be a prerequisite or a bar to the institution of or prosecution of legal proceedings by any party.

We have never held that the failure to provide notice of the availability of mediation as required by § 2-4807(1) is an affirmative defense to enforcement of agricultural debt subject to this notice requirement. And we need not, and do not, reach this question here, because we conclude that the instruction requested by the Cardenases was not warranted by the evidence. We also do not address whether Jose and Christina were "engaged in farming or ranching" with the LLC.[15]

FNBNP sought a deficiency judgment on the amount owed on note No. xxx332. Thus, that note is the relevant "debt"

---

[13] § 2-4802(3).

[14] § 2-4802(2).

[15] See *id.*

- 508 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

in this "proceeding" for purposes of § 2-4807. Jose and Christina—not the LLC—were the borrowers on this note. Jose and Christina, with or without the inclusion of the gross income from the LLC, do not meet the definition of borrower for purposes of § 2-4807(1), because they do not "derive[] more than fifty percent of [their] gross income from farming or ranching."[16]

Because Jose and Christina were not borrowers for purposes of the notice requirement of § 2-4807(1), the Cardenases' requested jury instruction was not warranted by the evidence. Thus, it was not error for the trial court to refuse to give this instruction. If the Cardenases wanted to raise the failure of FNBNP to provide notice as required by § 2-4807(1) before seeking to enforce those notes on which the LLC was a borrower, they should have done so in the Kentucky litigation. This assignment of error lacks merit.

### (b) Right to Cure

The Cardenases argue that the district court erred by refusing to give their proposed jury instructions on the affirmative defense that FNBNP refused to allow them to cure their default. We conclude that the Cardenases' requested instructions were not correct statements of law and that they were not warranted by the evidence.

### (i) Additional Facts

Many of the notes and trust deeds contained acceleration clauses allowing FNBNP, in the event of a default, to declare immediately due the entire amount owed. The first notice of default stated that FNBNP as trustee "has elected to and does declare the entire unpaid principal balance, together with the interest thereon, immediately due and payable." The second notice of default provided a section entitled "Notice of Right to Cure Default," which provided 2 months to cure the default

---

[16] See *id.*

- 509 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
299 NEBRASKA REPORTS
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

and notified the Cardenases of the amount of the entire principal and the amount of principal that would not be due had there been no default.

At trial, Christina admitted that she and Jose did not tender or offer to tender money to cure the default.

The Cardenases' first requested instruction addressing the first notice of default read:

> The [Cardenases] raised an affirmative defense that [FNBNP] failed to comply with the Nebraska Trust Deeds Act by failing and refusing to allow [the Cardenases] their right to cure the default in the Notice of Default filed on March 11, 2013.
>
> In connection with this affirmative defense, the [Cardenases] have the burden of proving, by the greater weight of the evidence, each and all of the following:
>
> 1. That [FNBNP] failed to comply with the Nebraska Trust Deeds Act by allowing [the Cardenases] to cure the default in the Notice of Default filed on March 11, 2013; and
>
> 2. That the [Cardenases] were willing and able to exercise their right [to] cure the default in the Notice of Default filed on March 11, 2013 had [FNBNP] allowed them to do so.
>
> If [the Cardenases] have met this burden of proof, then [FNBNP] is barred from recovery of any alleged damages on its deficiency action and your verdict must be for [the Cardenases].

The requested jury instruction with regard to the second notice of default was identical other than the date of the notice.

The district court did not give these requested instructions. Instead, the court instructed the jury that it must accept the court's legal conclusion that "[FNBNP] as trustee of the deeds of trust filed notices of default pursuant to Nebraska law, and served those notices of default on all parties as required by Nebraska law."

- 510 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

### (ii) Application

### a. Not Correct Statement of Law
### or Warranted by Evidence

First, we note that the requested instructions stated that FNBNP's refusal to allow the Cardenases to cure their default was a violation of the Nebraska Trust Deeds Act (the Act). But the Cardenases' assignment of error and brief argue that this also violated the terms of the deeds of trust. However, because the Cardenases did not request a jury instruction about a violation of the terms of the trust deed, we will consider this assignment of error only as it relates to the claimed violation of the Act.

The Act authorizes a trust deed to be used as a security device and provides that real property can be conveyed by trust deed to a trustee as a means to secure the performance of an obligation.[17] The Act includes detailed procedures that, in the event of a breach of the underlying obligation, permit the trust property to be sold without the involvement of any court.[18] Specifically, the Act allows a trust deed to expressly confer upon a trustee the power of sale.[19] Pursuant to this power of sale, a trustee can sell the property conveyed by a trust deed without any court's authorization or direction, though the trustee must comply with procedural requirements contained in the Act.[20] Because the Act allows the property securing an obligation to be sold without the judicial involvement that would be required to foreclose upon a mortgage, the proceedings surrounding a trustee's sale pursuant to the Act are sometimes referred to as "'nonjudicial foreclosure'" or "'trustee foreclosure.'"[21]

---

[17] See *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 830 N.W.2d 63 (2013).

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at 838, 830 N.W.2d at 66.

- 511 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

The Act includes detailed requirements that a trustee must satisfy prior to exercising the power of sale in a trust deed. A trustee must file with the county register of deeds a notice of default identifying the trust deed, stating that a breach of the obligation secured by the trust deed has occurred, setting forth the nature of the breach, and stating its election to sell the property to satisfy the obligation.[22] A notice of default with regard to property used in farming operations has additional requirements, including a 2-month period to cure the default and that the trustee provide "[a] statement of the amount of the unpaid principal which would not then be due had no default occurred."[23]

Although § 76-1006 imposes the requirement for notices of default, § 76-1012 provides the means by which a trustor may cure the default of an obligation secured by a trust deed. It states, in relevant part:

> Whenever all or a portion of the principal sum of any obligation secured by a trust deed has . . . become due or been declared due by reason of . . . a default in the payment . . . of any installment of principal . . . the trustor . . . may pay to the beneficiary . . . the entire amount then due under the terms of such trust deed and the obligation secured thereby . . . other than such portion of the principal as would not then be due had no default occurred, and thereby cure the default theretofore existing and thereupon all proceedings theretofore had or instituted shall be dismissed or discontinued, and the obligation and trust deed shall be reinstated and shall be and remain in force and effect the same as if no acceleration had occurred.[24]

---

[22] § 76-1006(1). See, also, *24th & Dodge Ltd. Part. v. Acceptance Ins. Co.*, 269 Neb. 31, 690 N.W.2d 769 (2005); *Gilroy v. Ryberg*, 266 Neb. 617, 667 N.W.2d 544 (2003).

[23] § 76-1006(2).

[24] § 76-1012(1).

The Cardenases' requested jury instructions were not correct statements of law, because they required the Cardenases to prove only that they "were willing and able to exercise their right [to] cure the default." But § 76-1012 provides that in order to cure a default, the trustor must "pay to the beneficiary . . . the entire amount then due." Thus, a default must be cured by paying the beneficiary, i.e., by tendering payment.

A tender of payment is more than being "willing and able" to pay. It is "an offer to perform, coupled with the present ability of immediate performance, which, were it not for the refusal of cooperation by the party to whom tender is made, would immediately satisfy the condition or obligation for which the tender is made."[25]

And even if the Cardenases' requested instructions correctly stated the law, they would not be warranted by the evidence. The Cardenases do not claim that they did, in fact, tender payment to cure the default, but only that they desired and intended to do so. But a desire is not a tender.

## b. FNBNP's Notice of Default Complied With Act

The Cardenases argue that FNBNP did not allow them the right to cure based on the notices of default, which they argue showed a "firm resolve"[26] to accelerate the debt and deny them the right to cure the default by paying the amount due "other than such portion of the principal as would not then be due had no default occurred,"[27] i.e., the nonaccelerated amount due. But this argument melds together the separate provisions regarding notices of default in § 76-1006 and the right to cure in § 76-1012.

[10,11] When interpreting a statute, the starting point and focus of the inquiry is the meaning of the statutory language,

---

[25] *Graff v. Burnett*, 226 Neb. 710, 716, 414 N.W.2d 271, 276 (1987).

[26] Brief for appellants at 29.

[27] See § 76-1012(1).

- 513 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

understood in context.[28] We ascertain the meaning of a statute by reading it in pari materia, in light of the broader structure of the relevant act and related statutes.[29]

Section 76-1012 provides a trustor the ability to cure a default on an obligation secured by a trust deed prior to a trustee's sale and have the trust deed reinstated. This section contemplates and references the filing of a notice of default, but does not itself require the notice of default or specify the necessary contents of a notice of default. These requirements are set forth in § 76-1006. Section 76-1012 adds no additional requirements for notices of default to those in § 76-1006.

The notices of default satisfied the requirements of § 76-1006. The first notice stated that a default had occurred, that the nature of the default was "[f]ailure to pay installment payments when due," and that FNBNP had elected to sell the property to satisfy the obligation. We have held that under § 76-1006(1), "for nonagricultural property, the notice of default need not contain information on how to cure the default."[30]

The second notice of default met the additional requirements of § 76-1006(2), which applies to property used for farming operations. It included "[a] statement of the amount of the unpaid principal which would not then be due had no default occurred."[31] Thus, the district court was correct to instruct the jury that the notices of default were made in accordance with the Act.

### c. Conclusion

In sum, the district court did not err by refusing to give the Cardenases' requested jury instructions on the right to cure. The right to cure in § 76-1012 does not add additional

---

[28] *Robinson v. Houston*, 298 Neb. 746, 905 N.W.2d 636 (2018); *Kozal v. Nebraska Liquor Control Comm.*, 297 Neb. 938, 902 N.W.2d 147 (2017).

[29] *Kozal v. Nebraska Liquor Control Comm., supra* note 28.

[30] *Gilroy v. Ryberg, supra* note 22, 266 Neb. at 629, 667 N.W.2d at 556.

[31] § 76-1006(2).

- 514 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
First Nat. Bank North Platte v. Cardenas
Cite as 299 Neb. 497

requirements to the requirements for notices of default in § 76-1006. And the requested instructions were not correct statements of law, because they required only that the Cardenases be "willing and able" to cure, not that they actually tender payment. The instructions were not warranted by the evidence, because it is undisputed that the Cardenases did not tender payment to cure the default. This assignment of error lacks merit.

### (c) Fair Market Value

The Cardenases argue that the district court erred by not instructing the jury to determine the fair market value of the property sold at the foreclosure sales. The court did not err, because the requested instruction was not a correct statement of law and because the court did instruct the jury to determine fair market value as part of its calculation of damages, although not in the particular language the Cardenases requested.

### (i) Additional Facts

At trial, the Cardenases requested that the district court give the following jury instruction on the affirmative defense that FNBNP purchased the property at the trustee's sales at below fair market value:

> The [Cardenases] affirmatively allege that [FNBNP] has failed to ascertain and bid the Fair Market Value of the subject real estate at one or both of the Trustee's Sales and has waived its right to, and is further barred from claiming a deficiency, if any, as a result of its actions in purchasing the properties at one or both of the Trustee's Sales at a value below the Fair Market Value.
>
> In connection with this affirmative defense, the [Cardenases] have the burden of proving, by the greater weight of the evidence, the following:
>
> 1. That [FNBNP's] bid and purchase of the properties at the Trustee's Sale held on May 28, 2013 was at a value below their Fair Market Value; or

- 515 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

2. That [FNBNP's] bid and purchase of the properties at the Trustee's Sale held on September 9, 2013 was at a value below their Fair Market Value.

If [the Cardenases] have met this burden of proof, then [FNBNP] is barred from recovery of any alleged damages on its deficiency action and your verdict must be for [the Cardenases].

However, the court did give the following jury instruction on the issue of damages:

If you return a verdict for [FNBNP], then you must determine how much money will fairly compensate [FNBNP] for its damages. [FNBNP] in [this] deficiency action under the . . . Act can recover the difference between the total indebtedness with interest and the costs and expenses of sale, including trustee's fees, and the greater of the sale price or *the fair market value of the property as of the date of sale*.

(Emphasis supplied.) The court also gave a jury instruction defining the term "fair market value."

*(ii) Application*

The content of the court's instruction was driven by § 76-1013. It provides a mechanism for creditors to recover a deficiency judgment for amounts still due and owing after a trustee's sale. Section 76-1013 states:

Before rendering judgment, the court shall find the fair market value at the date of sale of the property sold. The court shall not render judgment for more than the amount by which the amount of the indebtedness with interest and the costs and expenses of sale, including trustee's fees, exceeds the fair market value of the property or interest therein sold as of the date of the sale . . . .

We find no error regarding refusal of the requested instruction, for three reasons.

First, the requested jury instruction was not a correct statement of law. It stated that if the Cardenases proved that FNBNP bid below fair market value, the bank would be "barred from

- 516 -

Nebraska Supreme Court Advance Sheets
299 Nebraska Reports
FIRST NAT. BANK NORTH PLATTE v. CARDENAS
Cite as 299 Neb. 497

recovery of any alleged damages on its deficiency action." But the proposition that selling property at a trustee's sale for below fair market value is an absolute bar to recovery in a deficiency action has no basis in § 76-1013. Rather, a below fair market value sale would reduce the amount the creditor could recover in a deficiency action. Depending upon the mathematics of the transaction, a below market sale would not necessarily be a total bar to a recovery of a deficiency.

Second, the instructions given included the substance of the requested instruction. The district court instructed the jury to determine the fair market value of the property. The court instructed the jury that FNBNP could recover "the difference between the total indebtedness with interest and the costs and expenses of sale, including trustee's fees, and the greater of the sale price or the fair market value of the property as of the date of sale." This language tracks the language of § 76-1013. Thus, the substance of the Cardenases' proposed instruction, or at least the portion that was not an incorrect statement of law, was contained in the instructions actually given.

[12] Finally, the general verdict rule applies here. Because a general verdict does not specify the basis for an award, Nebraska law presumes that the winning party prevailed on all issues presented to the jury.[32] By rendering a verdict for FNBNP in the amount it claimed it was still owed, $171,162.66, the jury necessarily determined that the properties sold at or above fair market value. The district court did not err in refusing to give the Cardenases' requested jury instruction on fair market value.

## VI. CONCLUSION

Because we find no merit to any of the Cardenases' assignments of error, we affirm the judgment of the district court.

AFFIRMED.

WRIGHT and KELCH, JJ., not participating.

---

[32] *Heckman v. Burlington Northern Santa Fe Ry. Co.*, 286 Neb. 453, 837 N.W.2d 532 (2013).