Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/06/2024 09:08 AM CST

Main St Properties LLC, appellant, v.
City of Bellevue, Nebraska, appellee.

___ N.W.3d ___

Filed December 6, 2024.    Nos. S-23-940, S-23-951.

1. **Jurisdiction: Appeal and Error.** A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.

2. **Summary Judgment: Appeal and Error.** An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.

3. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.

5. ____: ____. Where a lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.

6. **Administrative Law: Jurisdiction: Appeal and Error.** Petition-in-error jurisdiction is limited by statute to a review of a judgment rendered or final order made by any tribunal, board, or officer exercising judicial functions and inferior in jurisdiction to the district court.

7. **Municipal Corporations: Appeal and Error.** When an entity such as a city council is exercising its judicial functions, the petition in error statute is the proper method for challenging such actions.

8. **Administrative Law: Words and Phrases: Appeal and Error.** A board or tribunal exercises a judicial function if it decides a dispute of adjudicative fact or if a statute requires it to act in a judicial manner. But where a board or tribunal decides no question of adjudicative fact and no statute requires it to act in a judicial manner, the orders are not "judicial" and are not reviewable by error proceedings.

9. **Evidence: Proof: Words and Phrases.** Adjudicative facts are facts which relate to a specific party and are adduced from formal proof. Adjudicative facts pertain to questions of who did what, where, when, how, why, and with what motive or intent. They are roughly the kind of facts which would go to a jury in a jury case.

10. **Administrative Law: Appeal and Error.** Whether a board or tribunal is required to conduct a hearing and receive evidence may be considered in determining whether the inferior board or tribunal exercised judicial functions.

11. **Municipal Corporations: Ordinances: Zoning.** A zoning ordinance constitutes the exercise of a governmental and legislative function, and a city council adopting a rezoning ordinance which amends a general zoning ordinance acts in a legislative capacity.

12. **Municipal Corporations: Actions: Appeal and Error.** An appeal or error proceeding does not lie from a purely legislative act by a public body to which legislative power has been delegated, and the only remedy in such cases is by collateral attack, that is, by injunction or other suitable action.

13. **Judgments: Jurisdiction: Appeal and Error.** An appellate court has the power to determine whether it lacks jurisdiction over an appeal because the lower court lacked jurisdiction to enter the order; to vacate a void order; and, if necessary, to remand the cause with appropriate directions.

14. **Jurisdiction: Appeal and Error.** When an appellate court is without jurisdiction to act, the appeal must be dismissed.

15. **Summary Judgment: Proof.** The party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. If the burden of proof at trial would be on the nonmoving party, then the party moving for summary judgment may satisfy its prima facie burden either by citing to materials in the record that affirmatively negate an essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the

nonmoving party's claim. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

16. **Summary Judgment.** Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute.

17. \_\_\_\_. In the summary judgment context, a fact is material only if it would affect the outcome of the case.

18. **Summary Judgment: Appeal and Error.** The grant of a motion for summary judgment may be affirmed on any ground available to the trial court, even if it is not the same reasoning the trial court relied upon.

19. **Contracts: Intent.** When the terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract.

20. **Summary Judgment.** Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for the purposes of summary judgment.

21. **Zoning: Ordinances: Presumptions: Proof.** The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary.

22. **Municipal Corporations: Zoning: Ordinances: Proof.** To successfully challenge the validity of a zoning ordinance, the party challenging must prove that the conditions imposed by the city in adopting the zoning ordinance were unreasonable, discriminatory, or arbitrary, and that the regulation bears no relationship to the purpose sought to be accomplished by the ordinance.

Appeals from the District Court for Sarpy County, GEORGE A. THOMPSON, Judge. Judgment in No. S-23-940 affirmed. Appeal in No. S-23-951 dismissed, and judgment vacated.

Adam J. Sipple, of Sipple Law, for appellant.

Ryan M. Kunhart and Claire E. Monroe, of Dvorak Law Group, L.L.C., for appellee.

FUNKE, C.J., MILLER-LERMAN, CASSEL, STACY, PAPIK, and FREUDENBERG, JJ.

Cassel, J.

# I. INTRODUCTION

In consolidated cases—one for declaratory and injunctive relief and the other an error proceeding—a landowner challenged a city ordinance rezoning its property. From an adverse summary judgment entered in both cases, the landowner brought separate appeals. Because the city's action was legislative, there could be no error proceeding. And because the city adopted the ordinance pursuant to its rights under a conditional zoning agreement that the landowner violated, we find no merit to the other appeal. In one case, we vacate and dismiss, and in the other, we affirm.

# II. BACKGROUND

These cases involve an ongoing dispute between Main St Properties LLC (MSP) and the City of Bellevue, Nebraska (City). As discussed in a previous appeal,[1] MSP operated a U-Haul business on a property it owned in Bellevue. As part of the business, MSP rented moving vans, trucks, and trailers, which were stored on the property.

## 1. Conditional Zoning Agreement

In 2012, MSP and the City entered into an agreement under which the City agreed to "conditionally rezone" MSP's property from a combined "General Residence" and "Olde Towne Overlay" district to a combined "Metropolitan General Business District" and "Olde Towne Overlay" district. The agreement stated that the "City has determined that it is in the best interest of the health, safety and welfare of the City and its residents to exercise its legislative prerogative in favor of [MSP]." It further stated:

> All rights, easements, privileges, covenants, terms, conditions and restrictions created hereunder are declared

---

[1] *Main St Properties v. City of Bellevue*, 310 Neb. 669, 968 N.W.2d 625 (2022).

to be in furtherance of a plan to promote and protect the cooperative use, operation and maintenance of the Parcel, the comprehensive development of the City and otherwise for the public health, safety, welfare and best interests of the City and its residents.

In exchange, MSP agreed that "[n]o parking or storage of U-Haul vans, trucks or trailers shall be permitted on the portion of the Parcel north of the north face of the building . . . ."

The agreement set forth a "Violations and Remedies" provision. It stated that in the event MSP should violate the agreement, "then, after providing [MSP] with written notice of such violation, and upon [MSP's] failure to cure such violation within ten (10) days after receipt of such notice, or, after three (3) violations have occurred regardless if the violations are cured," the City shall have the right to schedule a hearing to rezone MSP's parcel back to its 2012 designation, deny any additional permits or certifications with respect to the parcel, enjoin unlawful use of the parcel, and utilize remedies provided by law.

On the same day that the City signed the agreement, the city council approved an ordinance that conditionally rezoned MSP's property as set forth above.

## 2. Notices of Violations and Board of Adjustment Appeal

The City presented evidence that it issued and delivered written notices upon MSP for violations of the agreement on at least four occasions. Particularly relevant here, the notices referred to violations occurring in October 2012, September 2014, April 2020, and June 2020. Photographs taken at or around the time of the violations, which the court received in evidence, showed U-Haul trucks and trailers parked on the northeast corner of MSP's parcel and, in one instance, in an area located directly north of the building. Below, a separate photograph illustrates the parcel, with the northeast corner

marked in the image by a red rectangle, the parking directly north of the building marked by a yellow rectangle, and a blue square—which we have added for illustrative purposes only— outlining the building.



MSP's position has largely revolved around the meaning of the language "north of the north face of the building" in the agreement. MSP argues that it referred only to the area marked in the image by the yellow rectangle. The City maintains that the language referred to all areas north of the building line and thus prohibited parking U-Haul vehicles and trailers inside both rectangles.

Each written notice indicated that it was issued and delivered upon MSP by a Bellevue code enforcement officer. The City's official notice of violation form stated, "YOU ARE HEREBY NOTIFIED THAT YOU ARE IN VIOLATION OF THE BELLEVUE ZONING ORDINANCE AS INDICATED BELOW," next to which there were handwritten notes referring

to the agreement. Although there are slight differences in the capitalization and language used in the four notices, all generally ordered MSP to, within 30 days, "[h]ave all Uhaul [sic] vans, trucks and/or trailers Parked or Stored South of the North face of the Building."

The written notices stated that MSP had 30 days from receipt of the "Official Notice" to appeal the "Order" to the City's board of adjustment and stated, "If you fail to timely appeal this Order or fail to appear at a hearing scheduled pursuant to a timely request, then it shall be conclusively presumed that you are in violation of the Bellevue Zoning Ordinance sections referenced above."

It is undisputed that MSP did not appeal from the 2012, 2014, or April 2020 notices. However, MSP did file an appeal from the June 2020 notice, to the board of adjustment, which upheld the zoning violation. MSP then appealed the board of adjustment's decision to the district court. The parties eventually stipulated to the dismissal of that appeal, the merits of which are not at issue here.

## 3. SUBSEQUENT REZONING ORDINANCE

While the board of adjustment appeal remained pending, the City's planning commission held a hearing and recommended reversing the conditional rezoning of MSP's property based on the "documented violations" of the agreement. The city council introduced an ordinance to rezone MSP's property, based on the recommendation of the planning commission, and held public hearings on the ordinance. On September 1, 2020, the city council approved ordinance No. 4004, which rezoned MSP's property as it was classified before the agreement.

## 4. INSTANT LAWSUITS

MSP filed the instant lawsuits against the City in the district court, challenging the validity and enforcement of the rezoning ordinance. In one case (this court's case No. S-23-940), MSP requested declaratory and injunctive relief. In the other case (this court's case No. S-23-951), MSP sought to challenge

the ordinance pursuant to a petition in error. The cases were consolidated for purposes of discovery and trial.

## 5. Motions for Summary Judgment

The parties filed motions for summary judgment. Specifically, MSP moved for partial summary judgment in the case seeking declaratory and injunctive relief. MSP's motion alleged, in pertinent part, that (1) the court had subject matter jurisdiction and (2) the passage of ordinance No. 4004 "violated the statutory stay imposed by [Neb. Rev. Stat.] § 19-909 [(Reissue 2022)]," which "render[ed] the ordinance void and unenforceable." The City moved for summary judgment on all claims asserted by MSP.

The district court held a joint hearing on the motions in both cases, during which it received numerous exhibits. We will discuss the evidence in more detail later in the opinion.

## 6. District Court's Judgment

The district court entered summary judgment for the City in both cases and dismissed MSP's motion for partial summary judgment as moot. The court's written judgment found the City properly identified the undisputed material facts, including that the City "had record of" more than three violations of the agreement and "chose to exercise its rights" under the agreement to rezone MSP's property as it was classified before the agreement.

The court's analysis focused on three issues. First, it rejected MSP's argument that the adoption of the rezoning ordinance violated the stay provision in Neb Rev. Stat. § 19-909 (Reissue 2022). The premise of MSP's argument was that the City adopted the ordinance "in furtherance of"[2] the June 2020 violation from which MSP appealed. However, the court agreed with the City that

> [w]hen the City exercised its right under the Agreement to schedule a hearing to rezone the Property based on the

---

[2] See § 19-909.

requisite amount of MSP's violations occurring, all the aforementioned notices of violations were included as a basis to such request for rezoning, not solely the June 19, 2020 violation . . . . This was a valid action by the City with or without the June 19, 2020 violation included, a remedy afforded to the City by express terms of the Agreement.

Turning to MSP's interpretation argument, the court found that there was no genuine issue of material fact regarding the meaning of "north of the north face of the building." It reasoned that certain statements made in 2012 by MSP's prior counsel "specifically identified the area in question. North of the north face of the building includes both the 'red' and 'yellow' marked areas." The court characterized the statements as a "judicial admission" waiving the issue.

Finally, the court found that the adoption of the ordinance was not arbitrary, capricious, or unreasonable. It reasoned that the City's decision to exercise its rights under the agreement was based on three or more zoning violations by MSP at the property upon which MSP received notice. The court stated that MSP's assertion otherwise was "based on speculation and conjecture rather than the facts of the case."

MSP filed timely appeals in both cases, which appeals we moved to our docket.[3] We consolidated the appeals for briefing and disposition.

### III. ASSIGNMENTS OF ERROR

MSP chiefly assigns that the district court erred in denying MSP summary judgment and granting summary judgment for the City. MSP asserts, consolidated and restated, that the district court erred in (1) misinterpreting § 19-909 and finding the adoption of the rezoning ordinance was "not 'in furtherance of'" the zoning violation notice issued in June 2020 and (2) finding there was no genuine issue of material fact regarding whether

---

[3] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2022).

• prior counsel for MSP made a "judicial admission" waiving MSP's interpretation argument regarding the language "north of the north face of the building" in the agreement,

• MSP committed and received notice of three or more violations of the agreement,

• the City is "estopped from claiming the violations," and

• the City's actions were "taken out of ill will, or in bad faith," and were "arbitrary and unreasonable."

## IV. STANDARD OF REVIEW

[1] A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law.[4]

[2,3] An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor.[5] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.[6]

## V. ANALYSIS

### 1. Appellate Jurisdiction

[4,5] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.[7] In order to determine that we have jurisdiction to review the merits of MSP's claims on appeal, we must first determine whether the district court had subject matter jurisdiction to decide these cases. Where a

---

[4] *Dylan H. v. Brooke C.*, 317 Neb. 264, 9 N.W.3d 439 (2024).

[5] *Continental Resources v. Fair*, 317 Neb. 391, 10 N.W.3d 510 (2024).

[6] *Id.*

[7] *State ex rel. Constance v. Evnen*, 317 Neb. 600, 10 N.W.3d 763 (2024).

lower court lacks subject matter jurisdiction to adjudicate the merits of a claim, issue, or question, an appellate court also lacks the power to determine the merits of the claim, issue, or question presented to the lower court.[8]

In both cases, MSP challenged the validity and enforcement of the rezoning ordinance. A key difference between the operative complaints was the relief sought. In one case, MSP requested declaratory and injunctive relief. The other case sought to challenge the ordinance pursuant to a petition in error. This distinction is important.

For reasons set forth below, our jurisdiction turns on whether the city council rezoned MSP's property through exercising judicial functions or a legislative power. In a previous appeal involving these parties,[9] we distilled the applicable principles. None was novel.

[6-8] Petition-in-error jurisdiction is limited by statute to a review of "[a] judgment rendered or final order made by any tribunal, board, or officer exercising judicial functions and inferior in jurisdiction to the district court . . . ."[10] When an entity such as a city council is exercising its judicial functions, the petition in error statute is the proper method for challenging such actions.[11] A board or tribunal exercises a judicial function if it decides a dispute of adjudicative fact or if a statute requires it to act in a judicial manner.[12] But where a board or tribunal decides no question of adjudicative fact and no statute requires it to act in a judicial manner, the orders are not "judicial" and are not reviewable by error proceedings.[13]

[9,10] Adjudicative facts are facts which relate to a specific party and are adduced from formal proof. Adjudicative facts

---

[8] *Lancaster County v. Slezak*, 317 Neb. 157, 9 N.W.3d 414 (2024).

[9] *Main St Properties v. City of Bellevue, supra* note 1.

[10] Neb. Rev. Stat. § 25-1901 (Reissue 2016).

[11] *Main St Properties v. City of Bellevue, supra* note 1.

[12] *Id.*

[13] *Id*.

pertain to questions of who did what, where, when, how, why, and with what motive or intent. They are roughly the kind of facts which would go to a jury in a jury case.[14] Whether a board or tribunal is required to conduct a hearing and receive evidence may be considered in determining whether the inferior board or tribunal exercised judicial functions.[15]

[11,12] A zoning ordinance constitutes the exercise of a governmental and legislative function, and a city council adopting a rezoning ordinance which amends a general zoning ordinance acts in a legislative capacity.[16] An appeal or error proceeding does not lie from a purely legislative act by a public body to which legislative power has been delegated, and the only remedy in such cases is by collateral attack, that is, by injunction or other suitable action.[17]

Here, the undisputed facts show that the city council was exercising a legislative power in rezoning MSP's property. For example, it is undisputed that the city council did not hear sworn testimony, mark exhibits, or decide a dispute of adjudicative fact, and there is nothing suggesting that it was statutorily required to do so. The agreement itself stated that the conditional rezoning of MSP's property was an "exercise [of the City's] legislative prerogative." Moreover, the city council adopted the rezoning ordinance based upon the recommendation of the planning commission. It did not render a decision in an adversarial proceeding.

It follows that MSP's only remedy in this matter was by collateral attack, that is, by injunction or other suitable action.[18] Accordingly, we conclude that MSP utilized a proper method

---

[14] *Id*.

[15] *Id*.

[16] *Id*.

[17] *Id*.

[18] See *id.*

for challenging the city council's exercise of its legislative function in the declaratory and injunctive relief case. We have jurisdiction of the appeal there.

[13,14] We reach a different conclusion regarding the petition-in-error case. An appeal or error proceeding did not lie from the city council's purely legislative act.[19] We therefore vacate the portion of the judgment that purported to enter summary judgment in the petition-in-error case and dismiss that appeal for lack of jurisdiction. An appellate court has the power to determine whether it lacks jurisdiction over an appeal because the lower court lacked jurisdiction to enter the order; to vacate a void order; and, if necessary, to remand the cause with appropriate directions.[20] When an appellate court is without jurisdiction to act, the appeal must be dismissed.[21]

Having determined we have jurisdiction of one appeal, we next turn to MSP's assignments of error.

## 2. Stay Provision in § 19-909 Did Not Apply

MSP argues that the rezoning ordinance is "void" because the City introduced and adopted it in violation of a stay provision in § 19-909. Under § 19-909, "Appeals to the board of adjustment may be taken by any person aggrieved or by any officer, department, board, or bureau of the municipality affected by any decision of the administrative officer." Section 19-909 provides, in pertinent part:

> *An appeal stays all proceedings in furtherance of the action appealed from,* unless the officer from whom the appeal is taken certifies to the board of adjustment, after the notice of appeal shall have been filed with him or her, that by reason of facts stated in the certificate a stay

---

[19] See *id.*

[20] *Evert v. Srb*, 308 Neb. 895, 957 N.W.2d 475 (2021).

[21] *In re Interest of Sayrah P.*, 315 Neb. 436, 996 N.W.2d 623 (2023).

would, in his or her opinion, cause imminent peril to life
or property.

(Emphasis supplied.)

MSP's argument derives from the plain language of the stat-
ute. We understand MSP to argue that pursuant to § 19-909,
its appeal from the June 2020 violation to the board of adjust-
ment "stay[ed] all proceedings in furtherance of" the June 2020
violation, including adopting the rezoning ordinance. MSP
highlights that the ordinance was adopted while the board of
adjustment appeal remained pending and in the absence of an
"imminent peril" certification as contemplated in § 19-909. But
on these facts, MSP's argument lacks merit.

We agree with the City that its adoption of the rezon-
ing ordinance was not a § 19-909 "proceeding[] in further-
ance of" the June 2020 violation from which MSP appealed.
Instead, the City adopted the ordinance pursuant to its rights
under the agreement after three or more violations by MSP.
The "Violations and Remedies" provision of the agreement
expressly gave the City the right, "after three (3) violations
have occurred regardless if the violations are cured," to sched-
ule a hearing to rezone MSP's parcel to its prior classification.
The City did so. In this situation, § 19-909 did not apply.

### 3. No Genuine Issue of Material Fact

MSP makes several arguments that the district court erred in
granting summary judgment for the City, because there were
genuine issues of material fact. We disagree.

### (a) Summary Judgment Principles

[15] The party moving for summary judgment must make
a prima facie case by producing enough evidence to show the
movant would be entitled to judgment if the evidence were
uncontroverted at trial. If the burden of proof at trial would
be on the nonmoving party, then the party moving for sum-
mary judgment may satisfy its prima facie burden either by
citing to materials in the record that affirmatively negate an

essential element of the nonmoving party's claim or by citing to materials in the record demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.[22]

[16-18] Summary judgment proceedings do not resolve factual issues, but instead determine whether there is a material issue of fact in dispute.[23] In the summary judgment context, a fact is material only if it would affect the outcome of the case.[24] The grant of a motion for summary judgment may be affirmed on any ground available to the trial court, even if it is not the same reasoning the trial court relied upon.[25]

### (b) Additional Background

Before addressing MSP's specific arguments, we summarize pertinent evidence.

The City presented evidence on certain events leading up to the agreement. Before it signed the agreement and conditionally rezoned MSP's property in 2012, the city council held a public hearing. MSP's prior counsel spoke in favor of rezoning of the property. He recognized the City's concern that "we don't want the first thing that people see when they drive into our community from the east [to] be U-Haul trailers." He confirmed that MSP was willing to "restrict the property so you couldn't have anything out here close to the street that, to the extent that people found the U-Haul vehicles to be offensive, they would be back a ways."

---

[22] *Ronnfeldt Farms v. Arp*, 317 Neb. 690, 11 N.W.3d 371 (2024).

[23] *Great Northern Ins. Co. v. Transit Auth. of Omaha*, 308 Neb. 916, 958 N.W.2d 378 (2021), *disapproved on other grounds, Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022).

[24] *Slama v. Slama*, 313 Neb. 836, 987 N.W.2d 257 (2023).

[25] *Schuemann v. Timperley*, 314 Neb. 298, 989 N.W.2d 921 (2023).

As a potential solution, MSP's prior counsel proposed that the rezoning of MSP's property include a "'no U-Haul zone.'" To that end, he presented the following diagram:



Elaborating on the diagram, counsel proposed that the city council adopt a "covenant" designating a paved area—including "everything that was in front of the building line, which happens to be the same building line for the lots to the east and the property to the west"—where there would be "no parking of U-Haul vehicles, whether it be trucks, trailers, and vans, whatever." Similar language later appeared in the agreement.

The City also presented evidence that it rezoned MSP's property pursuant to the "Violations and Remedies" provision of the agreement. It offered the affidavits of various city officials, copies of the written notices, photographs documenting

the violations, internal communications between city officials regarding the violations, and the deposition testimony of an employee of MSP whom the October 2012 and September 2014 notices referred to as the recipient.

MSP disputed that the September 2014 notice was signed and received by its employee—whose first name was "Sarah"—when the notice listed the recipient as "Sara." MSP also pointed to the deposition testimony of its owner, alleging he "d[id] not recall the . . . notice." The owner of MSP generally testified that he had a conversation with a city official in 2014 regarding the agreement and that the official "advised" him the disputed language did not refer to the parking spots on the northeast corner of the parcel. The owner did not recall who the city official was or the date on which this conversation took place, and there was no documentation of it.

Similarly, MSP disputed that a code enforcement officer issued and delivered the April 2020 notice, which stated it was posted to the front door of MSP's property. In support, MSP pointed to the deposition testimony of its owner, alleging he "d[id] not recall receiving the . . . [n]otice."

MSP also disputed that the City had record of three or more violations of the agreement and "chose to exercise its rights" under the agreement to rezone MSP's property. MSP pointed to the deposition testimony of its owner. It also pointed to the City's internal records, which showed that certain violations were eventually marked as "'closed'" or "'cleared.'" MSP asserted that any notice it received was "timely cured."

Finally, MSP—relying on the affidavit of its owner—argued that the City acted in bad faith. The affidavit stated that the owner was previously a member of the city council, and in 2017, a recall petition was initiated to remove him; that in 2018, the City demolished a carwash he owned; that in 2019, he was "acquitted of charges related to electrical repairs" performed at another property he owned, and the charges were "brought by the City while [it was] attempting to interfere with [his] renovations" of that property; that he later initiated

a recall effort against a fellow member of the city council; and that in April 2020, the City demolished a building owned by MSP and then "imposed" a lien related to the demolition, but a district court found the amount of the lien was unreasonable and reduced it.

### (c) MSP's Arguments

#### (i) Purported Admission

In the first of several arguments, MSP disputes that prior counsel made a "judicial admission" about the meaning of "north of the north face of the building" in the agreement. Without commenting on the propriety of the district court's reasoning, we reach an independent conclusion that any dispute regarding the meaning was immaterial here.

The material facts were undisputed. The City presented evidence that MSP violated the agreement on at least four occasions—in October 2012, September 2014, April 2020, and June 2020. The agreement stated that the City had the right to rezone MSP's property after three violations of the agreement, regardless of whether they were cured by MSP. MSP does not dispute that it failed to file an appeal challenging the City's interpretation of the agreement until the June 2020 violation—which was, at least, the fourth one. We agree with the City that MSP forfeited the issue and cannot raise it now by collateral attack.

#### (ii) Violations and Notices

MSP next draws our attention to purported discrepancies with the violations and notices. First, MSP disputes that the September 2014 notice was signed and received by its employee, whose first name was "Sarah," when the notice listed the recipient as "Sara." MSP generally contends that it was not the employee's signature, showing that MSP did not receive the notice.

[19] However, the plain language of the agreement establishes that the absence of notice is not material. When the

terms of a contract are clear, a court may not resort to rules of construction, and terms are accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. In such a case, a court shall seek to ascertain the intention of the parties from the plain language of the contract.[26]

Here, the agreement stated:

> In the event that [MSP] should violate any of the provisions of [the agreement], then, after providing [MSP] with written notice of such violation, and upon [MSP's] failure to cure such violation within ten (10) days after receipt of such notice, or, after three (3) violations have occurred regardless if the violations are cured,

the City had the right to schedule a hearing to rezone MSP's parcel back to its 2012 designation, deny any additional permits or certifications with respect to the parcel, enjoin unlawful use of the parcel, and utilize remedies provided by law.

The agreement provided two options to the City regarding violations by MSP. The agreement set them forth separated by the disjunctive word "or." Each option began with the word "after."

The first option addressed a 10-day window to cure a violation. It required written notice to MSP.

But the second option did not require such notice. It permitted the City to schedule a hearing to rezone after three violations had occurred.

Because the second option applied here, the presence or absence of notice of the individual violations was immaterial. There is no material issue of fact regarding the City's three prior determinations that a violation had occurred. And under the agreement, it did not matter whether the violations were cured, whether timely or otherwise. Under the agreement and the facts here, whether MSP received notice of the prior violations was not material.

---

[26] *Seemann v. Seemann*, 316 Neb. 671, 6 N.W.3d 502 (2024).

Likewise, based on the plain language of the agreement, we reject MSP's argument that it did not receive the April 2020 notice. Here again, the presence or absence of notice was not material.

Finally, MSP highlights the City's internal records showing that some violations were eventually marked "'closed'" or "'cleared.'"[27] We fail to see how this affects the outcome of the case. It is undisputed that the agreement gave the City the right to rezone MSP's property after three violations of the agreement, regardless of whether they were cured by MSP. This argument lacks merit.

### (iii) Estoppel

MSP contends—based solely on the deposition testimony of its owner—that the City was "estopped" from claiming the violations, because in 2014, the City "agree[d] [MSP] could park in the northeast corner of the lot."[28] The City responds that MSP's allegations are not supported by competent evidence and that the testimony of MSP's owner regarding a "so-called 2014 agreement"[29] should be disregarded.

[20] As noted above, MSP's owner could not provide any specific details regarding the purported 2014 "agreement" between the parties. We are not persuaded that the owner's deposition testimony about a legal conclusion involving an unknown city official on an unknown date, of which there is no other evidence, creates a material issue of fact for the purposes of summary judgment. Conclusions based on guess, speculation, conjecture, or a choice of possibilities do not create material issues of fact for the purposes of summary judgment.[30]

---

[27] Brief for appellant at 23.

[28] *Id.* at 22.

[29] Brief for appellee at 21.

[30] *Strahan v. McCook Hotel Group*, 317 Neb. 350, 10 N.W.3d 187 (2024).

### (iv) Motive and Purpose

Finally, MSP argues that there is a genuine issue of material fact regarding whether the City's actions were taken in bad faith or were arbitrary, capricious, or unreasonable. MSP relies upon the affidavit of its owner, which described certain events preceding—but not necessarily connected to—the adoption of the ordinance. We see no merit to this argument.

[21,22] The validity of a zoning ordinance will be presumed in the absence of clear and satisfactory evidence to the contrary.[31] To successfully challenge the validity of a zoning ordinance, the party challenging must prove that the conditions imposed by the city in adopting the zoning ordinance were unreasonable, discriminatory, or arbitrary, and that the regulation bears no relationship to the purpose sought to be accomplished by the ordinance.[32] MSP has failed to do so here.

### VI. CONCLUSION

We conclude the following:
- We lack jurisdiction of the appeal from the district court's rejection of MSP's petition in error.
- We have jurisdiction of the appeal from the summary judgment refusing MSP's request for declaratory or injunctive relief.
- Section 19-909 did not apply to the City's legislative action based upon its contractual rights under the agreement.
- MSP forfeited the issue of whether "north of the north face of the building" included the northeast corner of the property.
- The plain language of the agreement permitted the City to proceed with such legislative action without regard to the presence or absence of notice of the individual violations.
- There was no genuine issue of material fact precluding summary judgment.

---

[31] *Dowd Grain Co. v. County of Sarpy*, 291 Neb. 620, 867 N.W.2d 599 (2015).

[32] *Id.*

• The judgment in the action for declaratory and injunctive relief is affirmed.
• The appeal from the judgment regarding the petition in error is dismissed, and that judgment is vacated.

JUDGMENT IN NO. S-23-940 AFFIRMED.
APPEAL IN NO. S-23-951 DISMISSED,
AND JUDGMENT VACATED.